UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ MAR 29 2019 ★
BROOKLYN OFFICE

------------------------------------------------------------- X

IN THE MATTER OF THE ESTATE OF
JOSEPH PRIOLO, BY DOLORES PRIOLO,
ADMINISTRATRIX, MOTHER, AND
NATURAL GUARDIAN, and DOLORES
PRIOLO,

                Plaintiff,

- against -

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT, POLICE
OFFICER CESAR DORADO, POLICE
OFFICER BRIAN BRANDT, POLICE
OFFICER PETER REPETTI, and SERGEANT
ERIC PANNI,

                Defendants.
------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**
15-CV-6080 (AMD) (ST)

**ANN M. DONNELLY**, United States District Judge:

On October 22, 2015, Dolores Priolo, the mother of and estate administrator for the decedent Joseph Priolo, brought this action against the City of New York, the New York City Police Department,[1] Police Officers Cesar Dorado, Brian Brandt, Peter Repetti, and Sergeant Eric Panni, alleging a 42 U.S.C. § 1983 excessive force claim, as well as state law claims of wrongful death,[2] assault and battery, loss of services and guidance, and negligence. (ECF No.

---

[1] The NYPD is a non-suable agency of the City of New York. N.Y.C. Charter § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("The district court correctly noted that the NYPD is a non-suable agency."); *see Araujo v. City of New York*, No. 08–CV–3715, 2010 WL 1049583, at *8 (E.D.N.Y. Mar. 19, 2010). Therefore, the NYPD is dismissed as a defendant in this action.

[2] Although the complaint alleges the wrongful death claim as a violation of the decedent's Constitutional and Section 1983 rights, the plaintiff clarified at the March 27, 2019 oral argument that I should consider the claim under state law. (March 27, 2019 Minute Entry.)

1

15.) On June 25, 2018, the defendants moved for summary judgment to dismiss the complaint in its entirety.[3] (ECF No. 58.) For the reasons stated below, the defendants' motion is granted.

## BACKGROUND[*]

This case arises out of a fatal shooting by a New York City police officer in Queens, New York. On the morning of October 26, 2014, Sergeant Eric Panni and Officers Peter Repetti, Cesar Dorado, and Brian Brandt went to New York Hospital in Queens, in response to a radio call about a dispute at the hospital.[4] (ECF No. 57-2 ¶ 1; ECF No. 68-1 at 25:2–17.) The officers spoke with hospital staff, and learned that at around 3:30 a.m., a man came to the hospital and demanded that a nurse give him syringes. (ECF No. 57-2 ¶ 2; ECF No. 68-1 at 27:17-24.) A security guard asked the man to leave; as he escorted the man out of the hospital, the man "menaced" him with a knife. (ECF No. 57-2 ¶ 3; ECF No. 68-1 at 27:17-24.) Hospital personnel showed Sergeant Panni and Officer Dorado still photographs, taken from security footage, that showed the man wielding a knife. (ECF No. 57-2 ¶ 5; ECF No. 68-1 at 28:2–3,

---

[3] On June 29, 2018, I granted the defendants leave to file a corrected motion rectifying three typographical errors in the original motion. (June 29, 2018 Order.)

[*] Unless otherwise noted, the facts are based on my review of the entire record, including the parties' 56.1 statements. I construe the facts in the light most favorable to the plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Without citation to evidence or law, the plaintiff casts doubt on the deposition testimony from the defendant officers as "self-serving" and uncorroborated. (ECF No. 64 at 1.) This does not create a factual dispute. *See Estate of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 436 (S.D.N.Y. 2015), *aff'd sub nom. Estate of Jaquez by Pub. Adm'r of Bronx Cty. v. City of New York*, 706 F. App'x 709 (2d Cir. 2017) ("[I]n the absence of any evidence of specific wrongdoing, [plaintiff's] excessive force claim is speculative and fails to raise any material issue of fact for trial." (citation omitted)); *Chandie v. Whelan*, 21 F. Supp. 2d 170, 176 n.4 (E.D.N.Y. 1998) ("'[M]otions for summary judgment must be decided on the record as it stands, not on a litigant's visions of what the facts may some day reveal.'" (citation omitted)).

[4] At the time, the hospital was known as Booth Memorial Hospital. (ECF No. 57-2 ¶ 1.)

30:7–20.) Hospital staff identified the man as Joseph Priolo, and gave Sergeant Panni his home address. (ECF No. 68-1 at 28:4–8.)[5]

Sergeant Panni and Officer Repetti drove to Mr. Priolo's home address, 43-44 Kissena Boulevard.[6] (ECF No. 57-2 ¶ 6; ECF No. 68-1 at 31:15–19.) When they arrived, Officer Repetti pointed out Mr. Priolo, who was walking near the street. (ECF No. 57-2 ¶ 7; ECF No. 68-1 at 47:17–23.) Sergeant Panni got out of the car, and asked Mr. Priolo his name. (ECF No. 57-2 ¶ 8; ECF No. 68-1 at 47:17–23, 49:2–6.) Mr. Priolo cursed, and did not answer. (ECF No. 68-1 at 49:9–19, 52:8–15.) The Sergeant told Mr. Priolo to stop; at that point, Mr. Priolo was a few feet from Sergeant Panni, facing away from him. (*Id.* at 52:18–53:3.) Mr. Priolo ran away from Sergeant Panni, and took an orange utility knife from his waist band.[7] (ECF No. 57-2 ¶¶ 9, 10; ECF No. 68-1 at 53:4–20, 54:3–55:12.)[8]

---

[5] The plaintiff dismisses the officers' deposition testimony about the hospital staff's statements as inadmissible hearsay. (ECF No. 64 ¶¶ 2–4.) The testimony is admissible not for its truth but to explain why the officers confronted Mr. Priolo and what they knew about him. The testimony would be admissible at a trial, and therefore can be considered at summary judgment. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." (citations omitted)).

[6] Officers Dorado and Brandt followed Sergeant Panni's car, and arrived less than a minute later. (ECF No. 68-1 at 47:7–14.)

[7] The plaintiff maintains that Mr. Priolo did not have a knife, a claim she bases on something that she says she heard from Denis Avila, who allegedly told her that he saw the shooting, and that Mr. Priolo "had no weapon." (ECF No. 67 at 72:24–25; *see* ECF No. 64 at 4 ¶ 10; ECF No. 67 at 77:12–17 ("[Mr. Avila] didn't see a weapon"). This is inadmissible hearsay. While "the nonmoving party [does not need to] produce evidence in a form that would be admissible at trial in order to avoid summary judgment," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), "any evidence considered on summary judgment must be reducible to admissible form," *Figueroa v. Mazza*, 825 F.3d 89, 98 n.8 (2d Cir. 2016) (citations omitted). The plaintiff says that Mr. Avila is not willing to testify at a trial (ECF No. 67 at 76:6–10), and does not demonstrate an alternative way to introduce the evidence; in fact, the plaintiff confirmed that Mr. Avila's testimony is inadmissible hearsay at oral argument. Therefore, I do not consider this evidence on summary judgment. The plaintiff also argues that Mr. Priolo did not have a knife because she did not "know [her] son to carry a knife" (ECF No. 64 at 4 ¶ 5; ECF No. 67 at 46:1–3); however, this general statement is not evidence that Mr. Priolo was unarmed on October 26, 2014.

[8] The parties' disputes about the length of the decedent's weapon (ECF No. 64 at 3 ¶ 20) and whether to

Mr. Priolo was about ten feet away from Sergeant Panni when he turned around and ran towards Sergeant Panni, holding the knife in his right hand. (ECF No. 57-2 ¶ 11; ECF No. 68-1 at 58:9–13.)[9] Sergeant Panni backed away, pointed his gun at him, and told him to stop and drop the knife. (ECF No. 57-2 ¶ 12; ECF No. 68-1 at 58:14–19, 61:10–15.) Instead, Mr. Priolo "charged [him] with the knife" (ECF No. 68-1 at 56:11–13), and then quickly "turned around and ran up the walkway towards Officer Dorado." (*Id.* at 63:12–17; *see* ECF No. 57-2 ¶¶ 13, 15.)

At that point, Mr. Priolo was about twenty feet away from Officer Dorado; no one else was near them. (ECF No. 57-2 ¶ 16; ECF No. 68-2 at 56:20–23, 61:6–23.) Mr. Priolo was still holding the knife, which was "up in the air" and "extended towards Officer Dorado." (ECF No. 68-2 at 55:23–24, 61:3–13; ECF No. 68-1 at 69:24–70:10.) Officer Dorado backpedaled away from Mr. Priolo, who was running at him; Officer Dorado twice told him to stop, but Mr. Priolo continued to run at the officer. (ECF No. 57-2 ¶¶ 17, 18; ECF No. 68-2 at 61:6–12.) When they were about eight feet apart, Officer Dorado fired two shots, hitting Mr. Priolo in the chest and right arm.[10] (ECF No. 57-2 ¶ 18; ECF No. 68-2 at 62:6–12; ECF No. 64-1 at 2.) After the two

---

call it a box cutter (*id.* at 2 ¶¶ 1, 5, 9, 17) are irrelevant, because both sides agree that Exhibit D—the photograph of the weapon—accurately depicts it. (*See generally* ECF No. 64.) The photograph shows a six-and-a-half inch knife with one inch of the blade exposed, and the other inch concealed within the knife's plastic handle. (ECF No. 57-7.)

[9] At this point, Officer Dorado had gotten out of his car; when he saw Mr. Priolo pull out the knife, the officer drew his gun. (ECF No. 57-2 ¶ 14; ECF No. 68-2 at 57:11–17.)

[10] The plaintiff claims that Sergeant Galgano, who was not present at the shooting, told her that "there was no lunging." (ECF No. 64 at 4 ¶ 9; ECF No. 67 at 65:25–66:6.) At oral argument, the plaintiff admitted that this statement was hearsay, but that it might be admissible as a statement against the declarant's interest under Fed. R. Evid. 804(b)(3). The plaintiff has not demonstrated that Sergeant Galgano is unavailable to testify, a prerequisite to this hearsay exception. In any event, the plaintiff did not explain how the statement by an officer who was not at the scene of the shooting could be binding on the City and other officers. The testimony is inadmissible hearsay, which I do not consider on summary judgment. *See supra* note 7.

shots, Mr. Priolo fell down, but was still breathing; Sergeant Panni took the knife out of his hand, handcuffed him, and called for an ambulance. (ECF No. 68-1 at 62:7–19; ECF No. 64-1 at 4; *see* ECF No. 57-2 ¶ 19.) Mr. Priolo was pronounced dead at the hospital. (ECF No. 64-1 at 5.)

The entire confrontation—from the officers' arrival at the scene until Officer Dorado fired his weapon—lasted less than two minutes. (ECF No. 57-5 at 5; *see* ECF No. 57-2 ¶ 21.) Officer Dorado estimated that his interaction with Mr. Priolo lasted only 25 seconds. (ECF No. 68-2 at 127:9-19.) According to Sergeant Panni, Mr. Priolo "never put the knife away," and it "was always threatening" the officers. (ECF No. 68-1 at 71:19–25.)

## LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions, in the form of deposition transcripts, affidavits, or other documentation, show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997); *Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 453–54 (S.D.N.Y. 2012) ("While disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." (quoting *Anderson*, 477 U.S. at 248)).

"Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex*, 477 U.S. at 324). The non-moving party "may not

rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998). In deciding whether summary judgment is appropriate, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008). "In deciding such a motion, the trial court must determine whether 'after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party.'" *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

## DISCUSSION

The defendants move for summary judgment on all claims—the 42 U.S.C. § 1983 excessive force claim, as well as the state law claims of wrongful death, assault and battery, loss of services and guidance, and negligence.

The defendants argue that they are entitled to summary judgment on the § 1983 excessive force claim because Officer Dorado's use of deadly force was objectively reasonable, and because he is, in any event, entitled to qualified immunity. The defendants also seek dismissal of the remaining state law claims on various grounds, including that the defendants are entitled to governmental immunity.

For the reasons discussed below, I grant the defendants' motion for summary judgment on the excessive force claim, and decline to exercise supplemental jurisdiction on the remaining state law claims.

I.   **Federal Law Claims**

   A.   **Section 1983 Excessive Force Claim**[11]

The defendants contend that Officer Dorado did not use excessive force in violation of the Fourth Amendment because his actions were objectively reasonable, and that he is, in any case, entitled to qualified immunity because his conduct did not violate clearly established law. I find that Officer Dorado is entitled to qualified immunity because he did not violate clearly established law, and do not address whether a constitutional violation occurred. *See Pearson v. Callahan*, 555 U.S. 223, 227 (2009) (Courts may decide whether defendants are entitled to "qualified immunity on the ground that it was not clearly established at the time of the search that their conduct was unconstitutional" without determining whether there was a deprivation of a constitutional right.).

The qualified immunity doctrine focuses on whether the claimed federal constitutional or statutory right "was clearly established at the time of the challenged conduct." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 255 (2d Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231 (citations omitted). The doctrine "serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances." *Salim v. Proulx*, 93 F.3d 86, 91 (2d Cir. 1996) (citing *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995)). The court should assess on the officer's actions in view of the clearly established law at the time the officer acted, *Pearson*, 555 U.S. at 232, and "only upon the officer's knowledge of

---

[11] At oral argument, the plaintiff amended the complaint so that Officer Dorado is the only named defendant for the excessive force claim. (March 27, 2015 Minute Entry.)

7

circumstances immediately prior to and at the moment that he made the split-second decision to employ deadly force," *Salim*, 93 F.3d at 92 (citations omitted). "[A]n officer's actions are not to be assessed with 20/20 hindsight." *Id.* at 91.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S.Ct. 548, 551 (2017)). "To determine whether the relevant law was clearly established, [courts] consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) (quoting *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010)). The law is also clearly established if circuit cases, including cases from other circuits, "clearly foreshadow a particular ruling on the issue." *Terebesi*, 764 F.3d at 231 (quoting *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997)).

"Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *City of Escondido, Cal. v. Emmons*, 139 S.Ct. 500, 503 (2019) (quoting *Kisela*, 138 S.Ct. at 1153). Although a case does not need to be "directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S.Ct. at 552 (internal quotation marks and citation omitted). "Precedent involving similar facts can help move a case beyond the otherwise 'hazy border between excessive and acceptable force,' and thereby provide an officer notice that a specific use of force is unlawful;" however, "general statements of the law are not

inherently capable of giving fair and clear warning to officers" in "obvious cases." *Kisela*, 138 S.Ct. at 1152 (citations omitted).

Moreover, "if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). An officer does not "violate[] a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014). Put simply, "qualified immunity . . . provides a broad shield for 'all but the plainly incompetent[,] . . . those who knowingly violate the law,'" *Estate of Devine*, 676 F. App'x 61, 63 (2d Cir. 2017) (summary order) (quoting *Malley*, 475 U.S. at 341), and those whose "decision to use deadly force 'was so flawed that no reasonable officer would have made a similar choice,'" *Salim*, 93 F.3d at 92 (quoting *Lennon*, 66 F.3d at 425).

In actions where the alleged excessive force resulted in death, courts face the unique problem that "the witness most likely to contradict the police officer's story . . . is unable to testify." *O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003) (some alterations omitted). For that reason, the court should not "simply accept what may be a self-serving account by the police officer," but "consider circumstantial evidence that, if believed, would tend to discredit the police officer's story." *Id.*; *see Garcia v. Dutchess Cty.*, 43 F. Supp. 3d 281, 289 (S.D.N.Y. 2014), *aff'd in part, dismissed in part sub nom. Garcia v. Sistarenik*, 603 F. App'x 61 (2d Cir. 2015).

The undisputed facts establish that officers were investigating a complaint that Mr. Priolo menaced a hospital employee with a knife. When Sergeant Panni ordered him to stop, Mr. Priolo armed with the knife, turned and ran at Officer Dorado, who fired his weapon two times, killing

Mr. Priolo. The plaintiff does not cite any contradictory factual account; instead, he cites the Firearms Discharge Review Board's recommendation that Officer Dorado be "retrain[ed] in tactics" as evidence that the officer used excessive force. (ECF No. 64-1 at 6; *see* ECF No. 60 at 5.) The Review Board's recommendation—obviously based on its after-the-fact evaluation—says nothing about the officer's reasonable belief at the time of the shooting. Moreover, the Review Board did not dispute the officers' accounts of the events; on the contrary, the Board's report, which included interviews of officer and civilian witnesses, confirmed Officer Dorado's and Sergeant Panni's version of the events, and explicitly cleared Officer Dorado of wrongdoing. (*See* ECF No. 64-1 at 2–4, 6.)

The plaintiff also argues that summary judgment is "particularly inappropriate" because Sergeant Panni "came to the opposite conclusion as to the need for deadly force." (ECF No. 60 at 4.) Sergeant Panni, however, confronted different circumstances; while Mr. Priolo approached Sergeant Panni with the knife, he stopped and quickly "turned around and ran up the walkway" toward Officer Dorado. (ECF No. 68-1 at 63:12–17.) Sergeant Panni explained that he did not shoot Mr. Priolo because he turned around. (*Id.* at 106:20-24 ("Q. Right, but you didn't shoot him or anything, right? A. No, only because he turned around . . . .").)

In any event, the actions of other officers are irrelevant to a qualified immunity determination; in this context, the question is whether Officer Dorado, at the time he used deadly force, reasonably understood that he was violating a clearly established statutory or constitutional right—not whether he believed there was a "need for deadly force." Accordingly, the availability of non-lethal alternatives is not pertinent to an inquiry about whether Officer Dorado violated a clearly established right when he used deadly force. *See Estate of Jaquez*, 104 F. Supp. 3d at 436 ("[A]s the text of the Fourth Amendment indicates, the appropriate inquiry is

whether the officers acted reasonably, not whether they had less intrusive alternatives available to them." (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).

In light of the undisputed events—that Officer Dorado knew that Mr. Priolo had menaced a security guard with a knife, that Mr. Priolo ran at Officer Dorado with a knife, that Mr. Priolo ignored his orders to stop, and that when Mr. Priolo got within eight feet of Officer Dorado, Officer Dorado shot him twice—Officer Dorado did not violate clearly established statutory or constitutional rights of which a reasonable officer would have known. *See Rockwell v. Brown*, 664 F.3d 985, 990–91 (5th Cir. 2011) (No violation where an officer shot man who had attacked an officer, and ran at the officers with an eight-inch knife in each hand.); *Chappell v. City of Cleveland*, 585 F.3d 901, 905, 910 (6th Cir. 2009) (No violation where an officer shot and killed a suspect who had "admitted [to] using knives in numerous armed robberies," ignored commands to drop a serrated steak knife with the blade pointing upward, and "move[d] quickly toward them . . . to within seven feet."); *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260–61 (10th Cir. 2008) (No violation where officers shot a man who pointed a large knife at the officers from between seven and twenty feet away, and ignored repeated orders to drop his weapon.); *James Biggs v. City of New York*, No. 08–CV–8123, 2010 WL 4628360, at **2, 4 (S.D.N.Y. Nov. 16, 2010) (No violation where an officer shot a man "no more than seven or eight feet away" waving a thirteen-inch long, serrated knife "over his head in an erratic manner" after officers repeatedly ordered him to drop the knife.); *Estate of Jackson v. City of Rochester*, 705 F. Supp. 779, 784 (W.D.N.Y. 1989) (No violation where an officer shot a man who pulled a knife out of his jacket, was asked to put the knife down "at least twice," and "made a motion toward" the officer with the "upraised knife.").[12] Under these circumstances, immunity is appropriate,

---

[12] The defendants also cite *Kisela*, 138 S.Ct. 1148, where "the Supreme Court found qualified immunity

because reasonable officers could disagree on whether Officer Dorado violated clearly established law. Officer Dorado is entitled to qualified immunity, and the excessive force claim against him is dismissed.

The defendants' motion for summary judgment is granted with respect to the plaintiff's § 1983 excessive force claim.

## II. State Law Claims

Because the only federal claim has been dismissed, I decline to exercise supplemental jurisdiction over the remaining state claims. *See Estate of Devine*, 676 F. App'x at 64 (summary order) (affirming the "district court's decision to decline to exercise supplemental jurisdiction over [the plaintiff's] state-law claims and to dismiss them without prejudice" where the district court granted summary judgment on the basis of qualified immunity); *see Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (internal quotation marks and citation omitted)). The plaintiff's state claims are dismissed without prejudice.

## CONCLUSION

I grant the defendants' motion for summary judgment on the plaintiff's excessive force claim, decline to exercise jurisdiction over the plaintiff's remaining state law claims, and dismiss the plaintiff's state law claims without prejudice. The Clerk of the Court is respectfully directed to close the case.

---

for an officer who used lethal force from the other side of a chain-link fence on a knife-wielding individual who ignored police commands and advanced towards an unarmed civilian." (ECF No. 58-1 at 12.) *Kisela* was decided in 2018, four years after Officer Dorado's 2014 encounter with Mr. Priolo; it sheds no light on whether there was a clearly established statutory or constitutional right when Officer Dorado used deadly force.

**SO ORDERED.**

                                                s/Ann M. Donnelly
                                                _____
                                                Ann M. Donnelly
                                                United States District Judge

Dated: Brooklyn, New York
        March 29, 2019